**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:21-cv-1621 |
| | : | |
| Plaintiff, | : | Judge Edmund J. Sargus, Jr. |
| | : | Magistrate Kimberly A. Jolson |
| v. | : | |
| | : | |
| TWENTY-EIGHT THOUSAND ONE | : | ANSWER AND DEMAND |
| HUNDRED EIGHTY AND 00/100 | : | FOR JURY TRIAL |
| DOLLARS ($28,180.00) IN UNITED | : | |
| STATES CURRENCY, | : | |
| | : | |
| Defendant, | : | |
| | : | |
| KERMIT WARREN, | : | |
| | : | |
| Claimant. | : | |

**ANSWER AND DEMAND FOR JURY TRIAL**

Claimant Kermit Warren ("Mr. Warren") answers the Verified Complaint for Forfeiture In Rem in the above-captioned proceeding as follows:

1.      This paragraph consists of legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

2.      Admit that the "Defendant" in this lawsuit is Mr. Warren's $28,180 in U.S. Currency, which was seized from him by the Drug Enforcement Administration ("DEA") on November 4, 2020, at the John Glenn Columbus International Airport ("CMH"). Deny that Mr. Warren's encounter with DEA was consensual. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

3.      This paragraph consists of legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

4.      This paragraph consists of legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

5.      This paragraph consists of legal conclusions, to which no response is required. To the extent a response is deemed required, the allegations are denied.

6.      Deny.

7.      Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

8.      Admit that a Transportation Security Administration ("TSA") screener or supervisor asked Mr. Warren about the contents of his carry-on bag and that Mr. Warren truthfully answered that he had about $30,000 in cash in the bag. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

9.      Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

10.      Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph regarding what the DEA Airport Group learned. Admit that Mr. Warren was traveling with his son Leo Warren.

11.      Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph regarding what the DEA Airport Group learned. Admit that Mr. Warren and his son Leo Warren flew to Ohio on November 3, 2020. Admit that Mr. Warren paid for one-way tickets for himself and his son to fly from Louis Armstrong New Orleans International Airport ("MSY") to Cleveland Hopkins International Airport ("CLE") with a layover at Dallas/Forth Worth International Airport ("DFW"). Deny that Leo Warren purchased or paid for either plane ticket. Deny that Mr. Warren or Leo Warren personally booked these plane tickets,

which were booked by Mr. Warren's brother, Nicodemus Warren. Mr. Warren lacks knowledge or information to form a belief as to the specific date the tickets were booked or purchased.

12.     Admit that Mr. Warren purchased one-way, same day tickets for him and his son Leo Warren to fly from CMH to MSY with a layover at DFW on November 4, 2020. Deny that Leo Warren purchased or paid for either plane ticket.

13.     Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

14.     Admit that DEA officers approached Mr. Warren and his son Leo Warren at their boarding gate at CMH on the morning of November 4, 2020, and identified themselves as law enforcement with DEA. Deny the remaining allegations in this paragraph.

15.     Admit that a DEA officer asked Mr. Warren about the cash Mr. Warren had in his bag. Mr. Warren lacks knowledge or information to form a belief as to TSA's reporting. Deny the remaining allegations in this paragraph.

16.     Admit that Mr. Warren had his cash in his carry-on bag, which was a paper gift bag. Deny the remaining allegations in this paragraph.

17.     Admit.

18.     Admit that the DEA officers asked Mr. Warren and his son Leo for identification and that Mr. Warren provided his driver's license and Leo provided his name and date of birth because he had lost his identification on the trip. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

19.     Admit that a DEA officer asked Mr. Warren about his reasons for traveling to Ohio with his cash and that Mr. Warren traveled to Ohio to buy a truck. Deny the remaining allegations in this paragraph.

20.     Admit that Mr. Warren did not purchase the truck because it was heavier and built for towing more heavy duty vehicles than he had anticipated. Deny the remaining allegations in this paragraph.

21.     Admit that Mr. Warren's brother Nicodemus Warren, who actually booked the tickets, had not realized there were multiple commercial airports in Ohio and had booked tickets for Mr. Warren and his son Leo Warren to travel to Cleveland, not realizing that their destination was closer to Columbus. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

22.     Admit that Mr. Warren and his son Leo Warren took a cab from Cleveland to Columbus and then to Buckeye Forklift & Equipment at 250 S. Jefferson Avenue in Plain City, Ohio on the evening of November 3, 2020. Admit that they arrived after Buckeye Forklift had closed for the day and the outer gates were closed. Admit that, since there were no motels nearby, Mr. Warren and his son Leo spent the night outside near the gate to Buckeye Forklift.

23.     Admit that Mr. Warren told a DEA officer he was a retired police officer and presented a New Orleans Police badge that had belonged to his son Kermit Warren, Jr., a former New Orleans police officer. Deny the remaining allegations in this paragraph.

24.     Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

25.     Admit.

26.     Admit.

27.     Admit.

28.     Admit that Mr. Warren explained that the badge had belonged to his elder son, Kermit Warren, Jr., who was a former New Orleans police officer and who is currently a police

officer in Lafayette, Louisiana. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

29.     Admit that Leo Warren was wearing his U.S. Army tracksuit from his Army service and that DEA officers asked him about it. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

30.     Deny that Mr. Warren was involved in any illegal activity, including anything related to illegal drugs. Admit that Mr. Warren was traveling interstate with his life savings using a one-way plane ticket purchased on the day of travel, a perfectly lawful activity done for legitimate reasons related to the intended purchase of a tow truck for his scrapping business, as explained above, for which he was apparently profiled, detained, and searched without reasonable suspicion, and had his life savings seized without probable cause. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

31.     Admit that the DEA officers baselessly accused Mr. Warren of transporting proceeds from illegal drug activity and seized his life savings. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

32.     Admit. Mr. Warren had no choice in the matter and was devastated by the seizure of his life savings.

33.     Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

34.     Mr. Warren lacks knowledge or information to form a belief as to the truth of the allegations in this paragraph.

35.     Admit that Mr. Warren had his life savings of approximately $30,000 in U.S. Currency in his carry-on bag. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

36.     Admit that Mr. Warren is familiar with the residence at 728 Tricou Street, which is his son Leo's residence. Deny that any drug trafficking occurs there. Mr. Warren lacks knowledge or information to form a belief as to the truth of the remaining allegations in this paragraph.

37.     Admit. Mr. Warren was not required to submit any documents with his administrative claim submitted to DEA pursuant to 18 U.S.C. § 983(a)(2), but he is prepared to testify before this Court and offer documentation substantiating how he earned and saved the Defendant seized currency, his life savings, over many years of hard work and savings.

38.     Deny.

The remaining paragraphs set forth Plaintiff's prayer for relief, to which no answer is required. To the extent any answer is deemed required, deny that Plaintiff is entitled to the relief requested or to any relief at all.

Mr. Warren hereby denies all allegations of the Verified Complaint not otherwise specifically answered above.

## AFFIRMATIVE DEFENSES

I.     Plaintiff's Verified Complaint fails to state a viable claim for which any relief may be granted.

II.     Plaintiff's Verified Complaint fails to establish any nexus, let alone any substantial connection, between the Defendant seized currency and any criminal offense.

III.     The Defendant seized currency does not "represent[] property furnished or intended to be furnished in exchange for a controlled substance, represent[] proceeds traceable to

such an exchange," nor was it "used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846," and Plaintiff cannot show that it was by a preponderance of the evidence. Thus, the Defendant seized currency is not subject to forfeiture under 21 U.S.C. § 881(a)(6) and Plaintiff cannot meet its burden under 18 U.S.C. § 983(c).

IV.     There is no relationship, real or implied, between the Defendant seized currency and any controlled substance, and no evidence supports such allegations. In fact, the Defendant seized currency was all earned legitimately by Mr. Warren, who saved his money over many years, as described in Mr. Warren's Verified Claim.

V.      DEA's interaction with Mr. Warren at the airport, and the warrantless search of Mr. Warren's bag and person, was a nonconsensual encounter, was done without reasonable suspicion, and was thus without authority of law and in violation of Mr. Warren's constitutional rights under the Fourth Amendment to the United States Constitution.

VI.     DEA's seizure of the Defendant seized currency lacked probable cause and was thus without authority of law and in violation of Mr. Warren's constitutional rights under the Fourth Amendment to the United States Constitution.

VII.    The intended forfeiture of the Defendant seized currency is not authorized by the relevant provisions of federal law, including 18 U.S.C. § 983, and violates the due process rights of Mr. Warren under the Fifth Amendment to the United States Constitution.

VIII.   The seizure and intended forfeiture of the Defendant seized currency violates Mr. Warren's constitutional due process rights to impartial administration of justice because DEA, the Department of Justice ("DOJ"), and the U.S. Attorney's Office for

the Southern District of Ohio have a direct financial stake in seizing and forfeiting the Defendant seized currency. If the Defendant seized currency is forfeited, it will be deposited in the DOJ Assets Forfeiture Fund controlled by DOJ, with the funds distributed at DOJ's discretion for specified law enforcement activities pursuant to 28 U.S.C. § 524(c). Upon information and belief, both DEA and the U.S. Attorney's Office for the Southern District of Ohio are eligible for, and currently receive, substantial distributions of funds from the DOJ Assets Forfeiture Fund, and would be eligible to receive some or all of Mr. Warren's life savings if it is forfeited in this proceeding. The profit incentive created by putting the proceeds from seized and forfeited property under the direct control of the very public officials who seize and forfeit property interferes with the fair and impartial administration of justice guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution and thus violates Mr. Warren's due process rights.

IX. The exercise of the spending power over the proceeds from forfeited property— including the Defendant seized currency that Plaintiff seeks to forfeit in this case—by DOJ is an unconstitutional delegation of legislative authority that violates the separation of powers under the United States Constitution. DOJ's control and discretion over spending of the proceeds from forfeited property from the DOJ Assets Forfeiture Fund pursuant to 28 U.S.C. § 524(c) improperly allows executive branch officials to engage in appropriations to self-finance their own activities, in violation of the separation of powers, including the legislative powers entrusted to Congress under Article I, Section 1 of the United States Constitution, the spending power entrusted to Congress under Article I, Section 8, Clause 1 of the United States Constitution, and the

appropriations power entrusted to Congress under Article I, Section 9, Clause 7 of the United States Constitution. This failure to respect the constitutional separation of powers violates Mr. Warren's due process rights under the Fifth Amendment and other constitutional rights protected by the constitutional separation of powers, including under Article I of the United States Constitution.

X.   If successful, the forfeiture of the Defendant seized currency would be an excessive fine in violation of Mr. Warren's constitutional rights under the Eighth Amendment to the United States Constitution and 18 U.S.C. § 983(g). Moreover, forfeiture of any amount of the Defendant seized currency would be grossly disproportional without proof beyond a reasonable doubt that the currency is the proceeds or instrumentality of a crime.

**JURY DEMAND**

Please take notice that Mr. Warren demands trial by jury on all issues so triable, including the issues and defenses raised herein.

Having fully answered the Verified Complaint and provided his affirmative defenses to the attempted forfeiture of his life savings, Mr. Warren respectfully requests that the Court enter judgment dismissing the Verified Complaint with prejudice and awarding Mr. Warren his costs and attorney's fees and such other relief as the Court deems just and proper.

Dated:  August 10, 2021                Respectfully submitted,

Signed: /s/ Kevin P. Foley

Kevin P. Foley (0059949)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, OH 43215
Phone:  614-232-2416; Fax: 614-232-2410
Email:  kfoley@reminger.com

Dan Alban* (VA Bar No. 72688)
Jaba Tsitsuashvili* (DC Bar No. 1601246)
INSTITUTE FOR JUSTICE
901 North Glebe Rd., Suite 900
Arlington, VA 22203
(703) 682-9320
(703) 682-9321 (fax)
dalban@ij.org
jtsitsuashvili@ij.org

*Attorneys for Claimant Kermit Warren*

\* *Pro Hac Vice* application pending

10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2021, a copy of the foregoing Answer and Demand for Jury Trial was served on Deborah Diane Grimes, Assistant United States Attorney, via CM/ECF filing.

Signed: /s/ Kevin P. Foley

Kevin P. Foley (0059949)
Reminger Co., L.P.A.
200 Civic Center Drive, Suite 800
Columbus, OH 43215
Phone:  614-232-2416; Fax: 614-232-2410
Email:  kfoley@reminger.com

*Attorney for Claimant Kermit Warren*